## ANGELO et al. v. DEUTSER.
### No. 1963.

Court of Civil Appeals of Texas. Beaumont.
July 11, 1930.

Rehearing Denied July 23, 1930.

Howth, Adams & Hart, of Beaumont, for plaintiffs in error.

King & Jackson, Sonfield & Sonfield, and A. L. Calhoun, all of Beaumont, for defendant in error.

## WALKER, J.

The parties to this appeal will be referred to as plaintiffs and defendant, that being their relation in the court below. Plaintiffs' cause of action was for breach of the covenant of quiet enjoyment, expressed and implied, in their written lease contract with defendant as the owner of the Threadneedle Building on Pearl street in the city of Beaumont. The trial was to a jury, but verdict was instructed in favor of defendant and judgment entered accordingly.

The facts, briefly stated, are as follows:

First. On the 1st day of March, 1928, defendant and plaintiffs entered into a written contract whereby defendant leased to plaintiffs for a term of two years certain portions of the Threadneedle building. The original contract provided that plaintiffs would not assign or sublet the premises. It also contained the usual covenants for the care and protection of the property, the terms of payment, etc. Plaintiffs further agreed "to comply with all and singular the ordinances of the City of Beaumont, and comply with the sanitary and police rules and regulations issued by any governmental authority, whether city, state or federal, governing the use and occupancy of said premises, and failing to comply with any and all of the covenants, conditions and obligations in this lease contained, first party shall have and is hereby given the right at his option to cancel this lease and the same thereafter be of no further force or effect. No improvements or alterations shall be made in or to the leased premises without the written consent of the first party." On the same day the original contract was executed and delivered the parties entered into a supplemental contract as follows:

"I. Relative to keeping plumbing work, closets, pipes and fixtures in good condition, it is agreed that lessor is to pay for any repair, additions or alterations thereto occasioned by wear and tear usual in sanitary regulations, and that lessee will bear the expense of any repair for work thereon occasioned by any improper use thereof by him.

"II. As to improvements or alterations, it is agreed that lessee may make such improvements and alterations as he now has in mind for the purpose of conducting fruit and vegetable and meat market business, and for such concessions as he may grant others for conducting other business therein.

"III. Lessee or second party is granted the right to sublet a portion thereof to other parties for the purpose of permitting such parties to conduct therein grocery business, bakery business, fish and oyster business, lunch counter business, confectionery or any other legitimate business so long as the same does not cause extra hazard on account of danger of fire."

Second. Immediately upon the execution and delivery of these contracts defendant delivered possession of the leased premises to plaintiffs, and they at once entered into possession of the premises and exercised the dominion of ownership over them. Prior to the execution of the contract plaintiffs and defendant had examined the premises together, and the improvements that plaintiffs had, to quote from the contract, "in mind" were fully understood between the parties.

Third. After the execution and delivery of the contract plaintiffs began preparations to use the premises for the purposes they had "in mind" in leasing them; that is, they purchased certain costly and necessary equipment, expending large sums of money for this purpose. They also proceeded to sublet certain portions of the premises on very profitable contracts, netting them returns largely in excess of the amount they were to pay defendant. Also, they proceeded to make contracts for the necessary repairs and alterations in the property, the cost of which they were to pay.

Fourth. But when plaintiffs asked permission of the city of Beaumont for permits for the repairs and alterations, these permits were refused on the ground that the Threadneedle building had been condemned as a nuisance and defendant ordered to tear it down long prior to the date of plaintiffs' lease contract. The materialmen refused to finish and install the necessary equipment for the alterations and repairs on the ground that the city would not grant them permits for these purposes.

Fifth. Plaintiffs duly notified defendant of the trouble they were having and of their inability to make the necessary alterations and repairs, and asked and demanded of him that he secure permits from the city for these purposes, or that he himself have the repairs made. Thereupon defendant undertook, in a clandestine way, to have the repairs made, but was unsuccessful. The city, through its proper officers, stopped the work and arrested certain of the workmen. Without these permits plaintiffs were unable to use the property for any profitable purposes, and without the permits they could not even secure electricity for the building.

Sixth. Plaintiffs paid one monthly rental, but, not being able to repair the building, refused to pay the other installments as they matured. Because the necessary repairs were not made, plaintiffs lost their tenants, the equipment they had put in the building, and

all the profits contemplated by them in making the contract with defendant. When plaintiffs refused to make further rental payments, defendant, under the terms of the lease contract, demanded possession. Plaintiffs refused this demand unless defendant would return the rent money paid by them and reimburse them for their losses. Defendant refused this demand and instituted suit for the rent that had accrued under the contract and for possession. On trial of this action he was successful, but a new trial was granted and the case was not further prosecuted. Later the building was destroyed by fire.

Seventh. The following are the facts explaining the city's refusal to issue the permits for the necessary repairs and alterations in the building. On the 29th of June, 1921, the city commission of the city of Beaumont entered its order against defendant, who at that time was the owner of the Threadneedle building, declaring this building to be a nuisance and ordering defendant to tear it down and remove it within one year from the date of the order. This order was never revoked by the city commission, and it was under authority of this order that the city refused plaintiffs' requests for the permits. Defendant knew of the entry of this order from the date of its entry. When he leased the Threadneedle building to plaintiffs he knew, or had reasonable ground to expect, that the city would refuse to give plaintiffs permits for the necessary repairs and alterations, but he in no way advised plaintiffs, before the contract was executed and delivered, of the entry of this order and of the probable trouble they would have in altering and repairing the building. Plaintiffs in fact had no notice of the entry of this order, nor did they have knowledge of facts giving them constructive notice of its entry. They did not acquire this knowledge until after they had purchased the necessary equipment for the building and had entered into the contracts with their subtenants.

Eighth. The validity of the order of condemnation and removal was one of the issues before the lower court. On submission of this case in this court plaintiffs conceded that this order was absolutely void from the date of its entry. On this admission it is not necessary to give the facts surrounding its entry which made it illegal and void. We simply state that it was void from its entry.

Ninth. Under the building regulations promulgated by the city of Beaumont it was necessary to make written application for permits to make alterations and repairs such as plaintiffs were preparing to make in the Threadneedle building. Neither they nor defendant, nor any one for them, made application in writing. The applications were merely oral requests for the permits, which were refused. However, had written applications been made, they would also have been refused.

Tenth. At the time of the execution and delivery of the contract defendant knew that the premises would be worthless to plaintiffs and without profit to them unless the contemplated alterations and repairs were made.

Eleventh. Plaintiffs were able to carry out the contract and would have carried it out according to its terms had they been permitted by the city to make the necessary repairs and alterations.

Twelfth. The damages suffered by plaintiffs, and for which they sue herein, proximately resulted from their failure to make the necessary repairs and alterations, as contemplated by the parties when the contract was entered into.

Plaintiffs have many assignments complaining of the exclusion of certain testimony and one assignment that the court erred in refusing them a new trial on the ground of newly discovered evidence. The bills of exception state the issues of fact plaintiffs proposed to establish by this excluded testimony and the newly discovered evidence. As this is an appeal from an instructed verdict, we have embodied, in our conclusions of fact, for the purposes of this opinion, all issues of fact that plaintiffs attempted to present to the jury.

■■ Reviewing plaintiffs' other assignments, we agree with them that the lease contract contemplated and expressly provided for the conduct of the particular business for which plaintiffs were leasing the premises, these being set out in the contract; that there was an implied covenant on the part of defendant that the necessary remodeling and rewiring could be done, and that there would be no legal obstacle to the making of such necessary repairs. This disposes of plaintiffs' first, second, and third propositions. By their fourth proposition they contend that defendant knew at the time he entered into the contract that the city would refuse to issue permits to plaintiffs to make the contemplated repairs, and by their fifth proposition they contend that at the time the contract was made plaintiffs did not know of the entry of the order of condemnation. These propositions have been resolved in plaintiffs' favor by the conclusions of fact already stated. This leaves for review only the sixth proposition which plaintiff states as follows: "That by virtue of the premises aforesaid it became the legal duty of the defendant to inform the plaintiff of the said facts, circumstances and conditions relating to the condemnation of the building and of both defendant's and plaintiff's probable inability to secure a permit for the remodeling or to obtain the necessary governmental consent thereto; that defendant failed to inform plaintiff of any such facts, circumstances and conditions, but deliberately concealed them from plaintiff and that this constituted fraud and deceit, for which a cause of ac-

.tion would lie for any damages directly resulting therefrom to plaintiff."

The simple meaning of this sixth proposition is that defendant was under the duty of informing plaintiffs of the existence of the order of condemnation and removal prior to the execution of the contract. That proposition we deny. The order of condemnation being absolutely void was no bar to defendant's use of the property nor his right to have it altered or repaired as the exigencies of his business might require. Having that right, he could lease the premises in good faith and confer that right upon his tenants. The order of condemnation being absolutely void, his failure to inform his tenants of its existence did not constitute fraud and deceit on his part. He had the legal right to make this contract with plaintiffs. He concealed from them no fact that, in law, constituted a breach of any duty owed by him to them. Under a proper application to the city plaintiffs were entitled to permits for the very repairs and alterations in question. The refusal of these permits was a wrongful act committed by the city against plaintiffs and to which defendant was in no way a party. Defendant granted plaintiffs the right to make, at their cost, these repairs. He did not contract to make the repairs. When he delivered possession of the premises to plaintiffs there was no legal bar to the execution of every element of the contract nor any legal bar to plaintiffs' right to alter, repair, and rewire the leased premises as the exigencies of their business might require. That he knew the city would commit this wrong against plaintiffs imposed upon him no legal duty to warn them. They had their legal remedies, adequate in all respects, to protect them against loss. Crossman v. City of Galveston, 112 Tex. 303, 247 S. W. 810, 815, 26 A. L. R. 1210, by the Supreme Court, is on all fours with this case. That case determined the rights of the parties as against a void ordinance of condemnation. Crossman sought an injunction against the city of Galveston to restrain it from destroying his property under a void ordinance and for a writ of mandamus to compel the city to grant him a permit to repair his building. After holding that the ordinance was void, and that the city was without authority to act under it, in determining the rights of the parties, the Supreme Court said: "This ordinance being void in so far as it relates to the subject of repair, no application to the city commissioners for permission to repair the building in question was necessary. The plaintiffs in error are at liberty to repair the building without making an application, and regardless of whether it may be granted or refused. It is unnecessary that a mandamus issue requiring the city commissioners to grant the application, for the reason that the city commissioners, under this ordinance, in view of the record before us, have no rights in the matter nor duty to perform relative thereto. * * * Since it is clear that the owners of a building lawfully erected have a vested property right in the building, it necessarily follows that they have the right to repair the building so as to keep it fit for use. To deny this is to deny the enjoyment of the property right itself."

Applying these propositions to the facts in his case, defendant announces the following correct proposition: "There was no judicial or valid condemnation of the leased premises and defendant in error can not be charged with failure to disclose as a fact that which was not a fact, and there could be no fraud or deceit in failing to disclose a condemnation where there was no condemnation." It follows that plaintiffs had a legal right to the necessary permits, and that the wrong done them was by the city and not defendant.

Plaintiffs advance two other propositions as corollaries to their sixth proposition. First, they insist that the failure of defendant to inform them of the void order of condemnation and removal before the execution of the contract resulted in their constructive eviction. As a basis for this proposition they insist that the contract contained an express covenant of quiet enjoyment, but, if mistaken in this, that this covenant was implied from the nature of the contract. Without quoting the contract in full, we say that it contained no express covenant as plaintiff insists. No language of the contract was subject to that construction. But this covenant is implied in lease contracts of this nature. Hertzberg v. Beisenbach, 64 Tex. 262. There was no constructive eviction, for plaintiffs did not abandon the premises, and that is one of its essential elements. 36 C. J. 261. Again, there was no constructive eviction because the wrong of which plaintiffs complain, to wit, the refusal of the permits, was the act of the city, a stranger to the contract, and, to constitute this eviction, "the act or omission complained of must be that of the landlord and not merely of a third person acting without his authority or permission." 36 C. J. 262.

Second. Plaintiffs insist that defendant "impliedly covenanted to deliver the premises to the plaintiffs substantially with the necessary remodeling and rewiring made, subject only to the condition that plaintiffs should perform and pay for the necessary work." In other words, plaintiffs insist that, since the intended use was specified in the contract and the right given to make the alterations essential to such use, there was an implied warranty that defendant would deliver the premises in substantially the condition needed. We must presume that the language of the contract correctly expressed the intent of the parties. Lynch v. Ortlieb, 70 Tex. 727, 8 S. W. 515. The supplemental con-

tract, which we have given in full, contains the covenants upon which this proposition is based. The most careful analysis of the language of this supplemental contract shows that the proposition is without support. In fact, it is negatived by the positive language of the contract. Defendant covenanted only to deliver the premises in the condition plaintiffs found them when the contract was made. This covenant he performed. It is clear from the language of the contract that he did not covenant to make any repairs or alterations in the leased premises, but merely consented that plaintiffs could at their own expense make such repairs and alterations as they had "in mind." On all the facts before the court, aided by the excluded testimony and by the testimony offered on motion for new trial, verdict was properly instructed in favor of the defendant, and it is our order that the judgment of the lower court be, and the same is hereby in all things, affirmed.