## LANGHAM'S ESTATE v. LEVY.
### No. 4380.

Court of Civil Appeals of Texas. Beaumont.
Dec. 5, 1946.

Rehearing Denied Jan. 8, 1947.

Charles S. Pipkin, of Beaumont, for appellant.

Geo. M. Sonfield, of Beaumont, for appellee.

MURRAY, Justice.

On February 15, 1936, Emmett E. Langham, Onyx I. Langham and Oliver J. Todd, were the independent executors and trustees under the will of James Biddle Langham, deceased. The said Langham Estate was then the owner of the real property situated at the corner of Fannin and Orleans Streets in the City of Beaumont. By a written lease contract, dated February 15, 1936, such executors and trustees leased a portion of the Langham building situated on such property to Sid Levy for a term of six years, beginning April 1, 1936. By the terms of the lease contract, the lessors agreed to partition off from the building situated on the property a store room for the lessee on the corner, which store room was to have approximately 20 feet frontage on Orleans Street; lessors further agreed to construct an individual front for said store on Orleans Street, and further agreed that they would "either con-

struct new floors or place the interior of said store room in good condition and redecorate the same suitable for the purpose of a gents' furnishing goods store, and will have the said room ready for occupancy by April 1, 1926." The lease contract reads as follows:

"The State of Texas
"County of Jefferson

"This agreement entered into in duplicate on this the 15th day of February A.D. 1936, by and between Emmet E. Langham Onyx I. Langham and Oliver J. Todd acting in their capacities as independent executors and trustees under the will of James Biddle Langham deceased hereinafter styled lessors and Sid Levy hereinafter styled lessee, Witnesseth:

"First:

"That the Lessors hereby lease and the Lessee hereby binds and obligates himself to become the tenant of said lessors for a period of six (6) years from and after April 1, 1936, subject to the terms and conditions hereinafter mentioned and all that certain portion of the Langham Building, located at the intersection of Orleans and Fannin Streets in Beaumont, Texas, being that portion of said building situated on the corner at the intersection of said streets, beginning at the corner of the building at said intersection, thence in a northerly direction with the Westerly line of Orleans Street twenty (20) feet more or less to a point where the line intersecting the columns in said building paralleling Fannin Street and going through the center of each of said columns intersects the Westermost line of Orleans St.; Thence in a Westerly direction paralleling the northermost line of Fannin Street intersecting the center of the row of columns above mentioned and continuing to the Eastermost edge of the stairway leading to the Second floor; thence in a Southerly direction, parallel to the Westermost line of Orleans Street, to the Northermost line of Fannin Street; thence in an Easterly direction with the said North line of Fannin Street to the place of beginning. In event Lessors should elect to remove the stairway now leading up to the second floor of said building, then the lessee is to also have use of the space now occupied by said stairway.

"Second:

"Lessors agree to partition off from said building a store room on the corner by running a partition along the line of the row of columns above described and either along the line of the stairway or if the stairway is removed by the Lessors than the said partition will extend to the back of said building and Lessors will construct an individual front for said storeroom on Orleans Street, and will either construct new floors or place the interior of said storeroom in good condition and redecorate the same suitable for the purposes of a gents' furnishing goods store and will have the said room ready for occupancy by April 1, 1936.

"Third:

"Lessors warrant and represent that they have a good title to the said premises so leased, and they agree and bind themselves, their successors and assigns to warrant and forever defend the said title unto the lessee his heirs, executors and administrators forever.

"Fourth:

"Lessors agree to maintain the roof and walls of said building, and the Lessee agrees and binds himself to maintain the inside and front of said building and at the expiration of the lease to return the said storeroom to the lessors in as good condition as same is received by him, usual wear and tear excepted.

"Fifth:

"In case the said premises are destroyed or damaged by fire or other cause, so as to render the same untenantable during the term of this lease, no rent shall accrue from the date of such destruction until same are again ready for occupancy.

"Sixth:

"The lessee shall make no alterations in said premises without the consent of the lessors first had and obtained in writing.

"Seventh:

"It is agreed and understood that the Lessee will use the leased premises as a

store room for the sale of men's and boy's Clothing and Gents' furnishings and the character of the business to be conducted in said store shall not be changed without the consent of the Lessors.

"Eighth:

"Lessee agrees to pay as rental upon the said building on the 1st day of April, 1936, and on the first day of each month thereafter for the period of twenty-four (24) months the sum of Ten ($10.00) Dollars per front foot on Orleans Street for the space above described and will further pay rentals on the 1st day of each month for the second two years of said lease, at the rate of Twelve ($12.00) Dollars per front foot per month for the space so occupied and for the last two years of said lease, will pay rental at the rate of Fourteen ($14.00) Dollars per front foot per month for the said property above described.

"Ninth:

"Lessee agrees to conduct said business in accordance with the laws of the United States, the State of Texas and the ordinances of the City of Beaumont and all valid rules and regulations prescribed by competent authority, and will not permit the said building to be used for the sale of intoxicants or for any improper or illegal purposes, and will not so use the same that the fire hazard will be increased or the insurance rate raised by reason of any such acts of the lessee. Lessee will so use the building as not to create a hazard to any persons or property in front of, or within said storeroom and assumes all responsibility for any damages which may occur to persons or property in the entrance of said storeroom, or in said room, through defects in portions of said building which he contracts to maintain.

"Tenth:

"Lessors shall not be liable for damages resulting from leaks in the roof of said building, unless written notice of the existence and approximate location of such leaks has been given to the lessors and five days time allowed for making needed repairs in such defective roof.

"Eleventh:

"Lessee shall not relet, underlet or assign the whole or any part of the leased premises without the written consent of the lessors.

"Twelfth:

"The Lessors shall have all' landlord's liens and other liens or right now conferred by statute or which may be conferred by statute during the term of this lease, and also shall have a contract lien covering all of the furniture, fixtures, or other personal property which shall be placed within said building, during the term of said lease.

"Thirteenth:

"It is further provided that for a breach of the agreement to pay the rentals for more than sixty (60) days after the due date thereof, or for a breach of any of the other agreements to be performed by the lessee, that the lessors after giving ten (10) days notice of such breach on the failure of lessee to perform his said obligations, then the Lessors may at their option terminate said lease.

"Fourteenth:

"It is agreed that should the lessee ever become bankrupt or be so adjudged or make a general assignment for his creditors, that at the option of the Lessors, this lease shall become null and void.

"Witness our hands in duplicate, at Beaumont, Texas, this the 15th day of February, A.D. 1936.

"Emmet E. Langham
"Onyx I. Langham
"Olive J. Todd
"Lessors.

"In their capacities as independent executors and trustees under the will of James Biddle Langham ·dec.

"Sid Levy
"Lessee."

Sid Levy was at the time of the execution of said lease contract engaged in business in the Alexander building, in which location his lease contract expired May 1, 1936. The Langham building was not ready for occupancy on April 1, 1936, and Levy moved to another location in the Perl building the latter part of April or first part of May, 1936. Considerable conversation and correspondence passed between the parties at this time: The following six letters passed between the parties:

"Exhibit 'P-3'

"April 22, 1936

"Messrs. Emmett E. Langham, Onyx I. Land, Oliver J. Todd,

"C/o Mr. Oliver J. Todd, Attorney at Law, Beaumont, Texas.

"Re: Sid Levy vs. Estate of James Biddell Langham, Deceased.

"Gentlemen:

"This will serve to notify you that Mr. Levy has referred the above captioned matter to us for attention.

"As you know, under the terms of the lease contract which you entered into with Mr. Levy on February 15th of this year, you covenanted and agreed to have the leased premises ready for his occupancy on April 1, 1936. Although twenty-one days have now expired since that time arrived, Mr. Levy informs us that no action has been taken by you with respect to preparation of the premises for his occupancy.

"As you also know, he is compelled to vacate on May 1, 1936 the premises which he now occupies. Relying upon the possession date in said lease contract as heretofore executed, Mr. Levy has obligated himself for a considerable stock of merchandise. It is readily apparent that by reason of your failure to have said premises ready for occupancy at the stipulated time you thereby caused and will cause Mr. Levy considerable damage, not only with respect to the loss of his stock purchased but with respect to business profits and good will.

"At this time Mr. Levy renews his tender of the rents stipulated to be paid on April 1, 1936, and this letter will therefore serve to notify you that unless these premises are promptly placed in agreed condition for occupancy for our client we shall be required to immediately file and prosecute proper suit for the protection of his interests. We shall appreciate an answer by return mail with respect to your intentions in the premises.

"Very truly yours,

"Heidrick & Tucker

"CFH:NF                    By                    "

Exhibit "P-4"

"Messrs. Emmett E. Langham, Onyx I. Land, Oliver J. Todd,

"C/o Oliver J. Todd, Attorney at Law, Beaumont, Texas

"Re: Sid Levy vs. Estate of James Biddle Langham, Dec'd.

"Gentlemen:

"Pursuant to our telephone conversation a few days ago, we discussed your proposition with our clients and are now advised by them that it is impossible to remain in their present location and are consequently vacating within the next day or two. We do not know what steps you have taken since the conversation to proceed to place your premises at our clients' disposal pursuant to your lease contract, but this is to further advise you that we shall look to you and your clients for any damages of any kind or character that our clients may sustain by reason of your breach of the lease contract heretofore mentioned.

"Very truly yours,

"Heidrick & Tucker,

"CFH:NF                    By                    "

Exhibit "P-5"

"Law Offices Oliver J. Todd 8th Floor American Nat'l Bank Bldg., Beaumont, Texas

"May 2, 1936

"Messrs. Heidrick and Tucker, Attorneys at Law,

"San Jacinto Bldg., City.

"Gentlemen:

"We are in receipt of yours with reference to the Levy lease.

"We found out that to fully remodel the Fair building, it was necessary to pay off a lien on the same which we are arranging to do.

"We could have fixed up the one room for Mr. Levy, but we would probably have been some two or three months thereafter with the rest of the building torn up, so that while we could have complied to the letter with Mr. Levy's lease;—as we had not contracted anything at all with reference to the balance of the building;—still we did not think it was doing Mr. Levy right to put him in this position, as he could sell more goods elsewhere during this period. Of course we would have liked to have had the rent from him, but folks like the Service Drug Company now try-

ing to do business next to building improvements, tell me that it is a hard game.

"I heard the other day that 'Sid had made the statement that he likes Pearl St., best and thinks his location there is better than the one on Orleans.

"What we would like to know is what Sid wants, as we are willing to take such course as may meet with his desires. If he wants to be relieved from the lease, we will gladly release him, or if he wants the store room fixed up, we will do that and give him possession thereof at a time that he will have a chance of a full benefit from his lease, and if there is any difference in his rents on the expense of moving, we will do what is right about that. We of course do not admit and do not believe, that during the building period in rearranging the Fair Building, that he could do as much business as he can on Pearl in his present location.

"We do not want to fix up this room specially for him, unless he is going to want to move in it when we get it finished, and I will thank you if you will let me know just what is his position and attitude in the matter.

"Yours most Sincerely,
"OJT–SS          Oliver J. Todd"

Exhibit "P–6"

"Messrs. Emmett E. Langham, Onyx I. Land, Oliver J. Todd,

"C/o Mr. Oliver J. Todd, Attorney at Law, Beamont, Texas.

"Re: Sid Levy v. Estate of James Biddell Langham, Dec'd.

"Gentlemen:

"This will acknowledge receipt of yours of May 2nd with reference to the above captioned matter, for which we thank you.

"It is and always has been the desire of our client to obtain possession of the premises which you leased to him and which you agreed to have ready on April 1st. As you know, he was forced to vacate his original location and has taken up temporary stand in the old J. C. Penny location. It is of course readily apparent that these various moves and temporary locations occasioned by your failure to have the premises ready for client's occupancy are caus-

ing and will cause him considerable damage.

"In order to promptly reach some definite settlement of the matters at hand, our client is agreeable to waive his accrued claim for damages in the event you and your clients will pay all costs and expenses of his moving from his original location to the Pearl location and from there to your premises, and the furthere consideration that his location in your building be ready for occupancy not later than July 15, 1936; and, in the event same is not ready for occupancy upon that date that you and your clients be liable for the sum of $30.00 per day as liquidated damages for every day thereafter that said premises are not ready for our client's occupancy. This proposition of settlement is conditioned upon acceptance within a period of three days from date hereof. As has been pointed out heretofore, our client has been ready, able and willing to perform his part of the lease contract at all times.

"Very truly yours,
"Heidrick & Tucker,
"CFH–NF          By          "

Exhibit "F–7"

"Law Offices Oliver J. Todd 8th Floor American Nat'l Bank Bldg. Beaumont, Texas

"May 9, 1936

"Messrs. Heidrick and Tucker, Attorneys at Law, City

"Gentlemen:

"I am in receipt of yours having reference to the proposed adjustment with Mr. Levy.

"We will be willing to fix up the corner as per original plans and give Mr. Levy possession when it is completed and after work has been completed on the adjacent rooms in the building, which would interfere with his operations, even though his room is complete. We will be willing to move him from his present location to this building when the time comes, and to extend his lease so that he shall have the full six years after he moves in.

"We would not care to consider the possibility of him making $30.00 net per day on Orleans St., much less $30.00 per day

more than he can make on Pearl St. In fact we do not think he could make as much on Orleans as he can on Pearl before we get the building entirely completed. On the other hand we think it would have been suicidal to him if we had fixed up his room and moved him in and then had the building process going on over and around him while he attempted to start up. As before stated, we had a legal right to do this, but I did not think then, nor do I think now that we would have had a moral right to do it, and I think he ought to thank us rather than condemn us for not moving him in before the rest of the building is completed.

"Yours most Sincerely,
"OJTOSS          Oliver J. Todd."

Exhibit "P-8"

"Messrs. Emmett E. Langham, Onyx I. Land, Oliver J. Todd,

"C/o Mr. Oliver J. Todd,. Attorney at Law, Beaumont, Texas

"Re: Sid Levy vs. Estate of James Biddell Langham, Dec'd.

"Gentlemen:

"Apparently it will be impossible for us to effect any settlement of your breach of the written lease contract in this matter as you did not see fit to accept the offer which we made you.

"We shall therefore be compelled to hold negotiations at an end and shall promptly proceed to file necessary suit to protect our client's interest for the damages which he has suffered and will suffer.

"Very truly yours,
"Heidrick & Tucker,
"CFH:NF          By          "

The premises affected by the lease contract were never prepared for Levy's occupancy according to the terms of the lease and the entire building situated at the corner of Fannin and Orleans streets was reconstructed and in February, 1938, the executors and trustees of the Langham Estate leased to another person for a ten year term, beginning May 1, 1938, the property concerned, together with the rest of the entire building.

On February 11, 1938, Sid Levy filed suit in the district court of Jefferson county against the executors and trustees of the Langham Estate for damages for breach of contract of lease. The defendants' exceptions that plaintiff Levy had not alleged that he had complied with the terms of the lease to pay rent or to make legal tender of the rent stipulated in such lease, and that he did not allege any legal excuse for his failure to enter upon the premises and make the repairs himself, were overruled. The case was tried to a jury and the jury in its verdict in response to special issues submitted by the court found that plaintiff Levy was on April 1, 1936, ready, able and willing to comply with the terms and provisions of the lease contract which were to be performed by him; that as of April 1, 1936, the reasonable monthly market rental value from April 1, 1936, to March 31, 1942, inclusive, of the premises involved in the condition in which they were to be placed under the terms of the lease contract was $300 a month; that the plaintiff Levy on or about April 1, 1936, did not abandon the lease contract and his alleged right to enter into the premises; that on or after April 1, 1936, the defendant lessors did not offer to make the repairs and alterations in the building conformable to the terms of the lease contract and did not accord plaintiff Levy the right of possession thereof at the time of completion of such repairs; that a reasonably prudent man situated as plaintiff Levy was, after having received such a proposal would have accepted terms of such proposal; that 60 days would have been a reasonable time within which the defendant lessors could have remodeled, reconstructed and repaired the building so as to make it "tenantable"; that had Levy accepted such proposal the defendant lessors would have started and carried to completion the repairs, remodeling and reconstruction in said building to conform to the lease contract; that had the plaintiff Levy made demand for possession of said premises in controversy on April 1, 1936, or thereafter, such possession would have been granted to him; that the plaintiff Levy and his representatives after the signing of such lease and on the day of performance, and thereafter, continued to negotiate with the defendant lessors "for the purpose of prosecuting and having made ready for him

the premises in controversy for his occupancy under the terms of the contract"; that such continued negotiations did not have the effect of waiving the plaintiff's strict compliance with the terms of the agreement to secure occupancy by April 1, 1936; that at the time Levy obtained the lease he was not insolvent.

By the terms of the lease contract in evidence the rentals reserved therein to be paid by the lessee Levy for the six years term aggregated $17,280.

The court entered judgment for plaintiff Levy against the defendant executors and trustees of the Langham Estate for the sum of $4,320, such sum being the difference between the reasonable rental value of the leased premises in the condition in which they were to be placed under the terms of the lease contract for the six year term, (as found by the jury), and the rentals reserved in the rental contract for that term.

After their motion for new trial was overruled, the defendants below have perfected their appeal to this court.

The appellants by points Nos. 1, 2, 4, 5, 7, 11 and 15 complain from various angles of the admitted fact that the appellee did not pay any rentals whatever upon the lease contract involved in this suit and did not go into possession and make the repairs. As pointed out in their brief, the only point in issue in these several points was that the appellee did not pay any rent and never made any tender of rent and never demanded possession nor took possession of the premises. Appellants argue that it was necessary for the appellee to allege and prove that he either performed his part of the lease agreement by paying the rent or that he made a legal tender of the rent. In answer to the allegation by appellee that the appellants had failed and refused to have the premises ready for his occupancy as described in the lease contract, which was alleged to be an excuse for such failure to pay or tender rents, appellants argue that the covenant to pay rent was a covenant separate and independent from the covenant on the part of the appellants as lessors to make repairs and to remodel,

and hence a failure to place the building in condition for occupancy did not excuse the appellee's failure to pay or tender rents provided for. They quote from and rely upon many authorities, including Mitchell v. Wiess, Tex.Civ.App., 26 S.W.2d 699; Community Theaters, Inc. v. Weilbacher, Tex.Civ.App., 57 S.W.2d 941.

██ We can not agree with the contention of the appellants that the covenant to repair the building and construct a store room in the corner of it was not a concurrent and dependent covenant. From the language of the lease contract itself it is readily apparent that the construction of the store building of a certain size and character was at the very heart of the contract. Without its performance, the balance of the lease contract was of no importance to the lessee. Whether a promise in a contract is dependent or independent depends primarily on the intention of the parties as determined from the language of the contract. The presumption is that all stipulations in a contract are dependent and a promise would be so regarded in case of a doubt. Investors Utility Corp. v. Challancombe, Tex.Civ.App., 39 S.W.2d 175, and cases cited therein.

The cases relied upon by the appellants, Mitchell v. Wiess, supra, and Community Theaters, supra, both are based upon facts which distinguish those cases from the instant case. In both of the cases cited by appellants, the tenant was in possession of the premises when the controversy arose over the repairs. In the instant case the lessee, appellee, was never in possession of the premises and the premises were never placed in a state of repair and reconstruction which would have permitted him to use the premises for the purpose for which they were leased. We believe that under the facts of this controversy, when the premises were never placed in condition for their occupancy by the lessee and the lessee never did go into possession thereof, he was thereby relieved of any obligation to pay the rentals provided for in the lease contract. See Graves v. Brownson, Tex.Civ.App., 120 S.W. 560. See further, Annotations to Lunn v. Gage, 87 American Decisions, 233.

Appellants' points, 6, 7, 10, 14 and 17 contend that the trial court erred in overruling the appellants' motion for instructed verdict because the evidence was undisputed that appellants proposed to repair said building after April 1, 1936, that Levy refused to accept the premises and rescinded and abandoned the lease contract on May 26, 1936, and because the evidence was undisputed that the appellee never paid any rent and never demanded possession of the premises; that the trial court erred in failing to set aside the finding of the jury to the effect that the appellant did not offer on or after April 1, 1936, to make repairs and alterations to the building, since such finding is without support in the evidence; that the trial court erred in refusing to grant their motion for judgment non obstante veredicto because the undisputed evidence was that the appellants offered to make the repairs called for in the lease subsequent to April 1, 1936, but the appellee refused to take the premises and rescinded the contract; that the court erred in rendering judgment against them for the whole period of the lease since the undisputed evidence showed that the contract was rescinded by the appellee on May 26, 1936. All these points are presented and briefed together by the appellants and will be so considered here. The lease contract under examination here was an executory contract entered into on February 18, 1936 (dated February 15), the term of which was to begin April 1, 1936. It called for remodeling and construction of a store room and when an architect was called in to inspect the building it was found that the operation involved not merely running a simple partition through a portion of the building but that it would be necessary to reconstruct the roof and the supports for the building. The entire building would have to be reconstructed. This would necessitate a much greater expense than anticipated by the appellants at the time they entered into the lease contract with the appellee. The appellee was so informed by the appellants, as is shown by the letters between the parties and by the conversations between the parties. The appellants argue that although they were

in default on their covenant in the lease contract to remodel the premises for the appellee, the parties continued to treat with each other on this matter, and that on the 26th of May, 1936 the appellee rescinded the contract and therefore is not entitled to recover anything from the appellants, and in the alternative, if he is entitled to recover any damages at all from them, he could not recover for a period of time extending beyond July 26, 1936. This day was fixed as being the time at which appellants could have complied with their covenant to repair the premises in conformity with the lease contract. Appellants argue that there is no proof that they refused possession of the premises to appellee but that there is proof in the record that he could have had possession of the premises at any time he demanded them. The record reflects that the appellee did not demand possession of the premises in the condition in which they were at that time but that he did request possession of the premises as repaired and remodeled into a store room, as provided for in the lease contract. We do not believe that under the circumstances presented here the appellee was under any obligation to demand or take possession of the premises so long as they were not repaired and ready for occupancy by him. The appellants had entered into an agreement to do certain things before the appellee was required to take possession of the building and these things were never done. It is true that complying with their covenant to repair and place in a certain condition for occupancy was then found by the appellants to be a more expensive and more onerous undertaking than they had believed was the case at the time the lease contract was entered into, but this can not serve to relieve them of the obligation which they had assumed. Appellee would not be required to take possession of the building in its then condition and make the repairs and alterations provided for in his lease contract before bringing an action for damages for breach on the part of his lessors. Further, the letter dated May 26, 1936, from the appellee's attorneys to the appellants can not be construed as an abandon-

ment and rescission of the lease contract on his part. After the passing of offers and counter offers in an attempt to settle the differences between the parties, after lessors had defaulted on the repairs and remodeling, the letter stated that it appeared that a settlement was impossible and that suit would be filed for damages. This letter evidences the intent on the part of the appellee to abandon any effort to work out a new agreement or supplemental agreement with the appellants, and announced an intention to sue on the contract which he had. The position of the appellants as reflected by the letters between the parties, indicates that they had been unable to complete the alterations and repairs by the date specified in the lease contract; that they were going to have to repair and rebuild the entire building; that this was going to cost a great deal of money and expensive preparations would have to be made therefor; that they thought the appellee would not be pleased or benefited by having building operations in progress beside him and above him in the rest of the building even if they did first prepare his corner for a store room; that they wanted to be reassured by the appellee that he would take possession and use the corner premises in the event they should repair it as they had contracted; that if he, appellee, did not agree to use that portion of the building at such time as they would complete it under a new or supplemental agreement, they did not propose to fix up this room especially for him, but would rebuild the entire building instead. This can not be regarded as a tender on the part of the appellants to deliver possession of the premises in the condition called for by the lease contract.

The appellants' complaint as to the measure of damages applied by the trial court is overruled. The general rule is that the injured lessee may recover from his landlord the difference between the market rental value of the leasehold for the unexpired term of the lease and reserved rentals stipulated therein. See B. F. Avery & Sons Plow Co. v. Kinnerly, Tex.Com. App., 12 S.W.2d 140; 27 Tex.Jur. 227, and cases cited. This measure of damage

was properly applied to the facts of the instant case.

Points 8 and 9 complain of the wording of special issue A in the court's charge, which inquired whether Levy, plaintiff below, was ready, able, and willing to comply with the terms and provisions of the lease contract dated February 15, 1936, which were to be performed by him. It is argued by the appellants that this special issue was both duplicitous and on the weight of the evidence. The phrase "ready, able, and willing," as applied to financial transactions, has acquired a certain meaning in the law. Whether plaintiff below was "ready, able, and willing" was an ultimate fact to be determined in this case, and it was within the discretion of the trial court to decide whether to group the three fact situations involving the words, "ready," "able," and "willing" and submit the issue as one ultimate issue, or to divide the inquiry into three separate special issues. 41 Texas Jur. 1107. Appellants argue that this special issue was on the weight of the evidence since one of their principal contentions was that the appellee had never performed any part of the contract, had not offered to take possession of the premises, had not paid any rent, had refused to take possession of the premises when appellants offered the premises in the condition called for in the lease and had rescinded the contract; and, to quote from their brief, "Special Issue No. A, in the form submitted, assumes that if the plaintiff were ready, willing, and able to comply with the contract, it was necessary for him to perform or tender performance and is therefore on the weight of the evidence." From what has been written above, in passing upon other points in appellants' brief, it is seen that we do not agree with the argument of the appellants that they tendered the premises to the appellee in the condition called for by the terms of the lease contract. We have also held that under the circumstances of this case, appellee was not under obligation to pay rent or to take possession of the unrepaired building and make the alterations and repairs himself. We are unable to agree that the form of the issue as submitted makes any of the assumptions at-

tributed to it by the appellants in the language quoted above from their brief. It was not subject to the objection that it was upon the weight of the evidence. Points 8 and 9 are overruled without further discussion.

The judgment of the trial court is affirmed.