### SCHOENBERG v. FORREST.

No. 12445.

Court of Civil Appeals of Texas.
San Antonio.

Oct. 22, 1952.

Rehearing Denied Nov. 19, 1952.

332 ■ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉

Forrest Bennett, John Gilliland, and William E. Remy, San Antonio, for appellant.

Clifton & Tynan, San Antonio, for appellee.

NORVELL, Justice.

This is the second appeal of this case. Our previous opinion is reported in 228 S. W.2d 556, and referred to for a statement of the case, particularly the controlling provisions of the contract involved herein. Upon the first trial Forrest was awarded a recovery of $10,000, but, because of error in submitting the case to the jury, such judgment was reversed. Upon the trial from which this appeal is prosecuted, a judgment for Forrest in the sum of $123,-200 was rendered.

Appellant vigorously asserts that the trial court erred in refusing to grant his motion for an instructed verdict and in failing to grant his motion for judgment non obstante veredicto. It is also asserted that the award of damages is not supported by the evidence and is grossly excessive.

The contract involved (which is set out in detail in our former opinion) gives and grants to appellee, Jack Forrest, a general sales agency for the eastern part of the United States for the selling of a product manufactured by appellant, Schoenberg, and known as Collar-Bobs. A Collar-Bob is a device for fastening the points of a shirt collar to the front of the shirt. A pin about three-eighths of an inch long goes through the collar point and the shirt and is fastened on the underside with a little spring-action clutch. The contract was terminated by Schoenberg (wrongfully, according to the jury's findings,) on August 25, 1948. Damages were sought to be measured by an estimate of anticipated profits in the future (which would have occurred except for the breach) based upon the profit history of the enterprise prior to its determination. Appellant insists here, as he did in the former appeal, that anticipated future profits could not be recovered, as the evidence fails to show that the manufacture and sale of Collar-Bobs was an "established business." (In the alternative, it is suggested that the issue of "established business" was one of fact which should have gone to the jury.) Upon the first appeal, we held upon authority of Southwest Battery Corp. v. Owen, 131 Tex. 423, 115 S.W. 2d 1097, that there was a sufficient past business record of the manufacture and sale of Collar-Bobs upon which to base an estimate of lost profits in some amount.

■ There is an important difference in the record now before us and the one presented upon the former trial. The present record discloses that two retailers of men's furnishings testified that Collar Bobs constituted a novelty or fad, and that although they still carried the same in stock, the demand therefor had almost ceased, principally because of a change in the style of men's shirt collars. This evidence will be noticed in more detail later. To the

present point it is sufficient to say that this testimony does not wholly destroy the past profits record as a basis for estimating damages, and we therefore adhere to our holding upon the former appeal.

Appellant in asserting that judgment should have been rendered in his favor for the reason that no proper measure of damages was pleaded and proved, says that the contract here involved is essentially a personal service contract; that it is more accurate to speak of "lost earnings" rather than "lost profits," and that the case is governed by the rule of Lichtenstein v. Brooks, 75 Tex. 196, 12 S.W. 975, which restricts a recovery of wages recoverable by an employee wrongfully discharged to those which have accrued at the time of trial.

■ The contract with which we are concerned is not a simple agreement for personal services. Forrest obligated himself to devote his efforts to the promotion and sale of appellant's manufactured articles, but it was specifically stated that he should build up an organization, employ salesmen and agents. In other words, he would establish a sales agency or a business to sell Collar-Bobs. The past profits of such a business could serve as a reasonable basis of an estimate of future profits and we, in effect, so held in our former opinion.

■ However, the fact that this is a case wherein damages in some amount for future profits may be recovered does not mean that an award in any amount that might occur to a jury will be sustained. An award of damages like any other issuable fact must be supported by evidence.

The contract was in existence for a period of approximately eight months, i. e., from December 30, 1947, to August 25, 1948. This may be termed the base period upon which appellee relies to establish a recovery for "lost profits." The gross amounts received upon sales commissions by Forrest for the months of 1948, according to his testimony, were as follows: January, $1,458.17, February, $1,150.90, March, $1,931.69, April, $1,218.90, May $1,-890.39, June $951.62, July $752.22, and August, $309.76, a total of $9,663.65, for eight months or two-thirds of a year. (The smaller figures for July and August were explained by Forrest's statement that much of this time during these months was occupied with devolopment work in New York which was a new territory.) Forrest's estimate of expenses (and the basis of this estimate should be capable of more accurate statement) was $100 per week or $3,466.67, for two-thirds of a year. According to these figures, appellee received approximately $774.62 more per month from commissions than he paid out in expenses. Forrest testified that he was making (at the time of the trial) approximately $400 per month in the real estate business. The monthly gross receipts less expenses and less what Forrest made in other employment results in a figure of $374.62 per month. If the last two months (July and August of 1948) be disregarded and a six months basis rather than an eight months basis be taken, this monthly figure will run somewhat higher.

It seems apparent that the jury necessarily adopted some formula similar to that set out, and then extended the eight or six months period calculations to cover the entire term of the contract, and perhaps even allowed for an increase in business over the years.

Appellee based his recovery entirely upon the theory of "lost profits," predicated upon the mercantile history of an "established business." The court's charge with reference thereto was as follows:

"In estimating the amount of damages, if any, you may take into consideration the amount of the earnings of Jack Forrest, if any, under the contract, from December 30th, 1947, to August 25th, 1948, over and above his necessary expenses in the performance of his duties under the contract, and you may also consider what amount he may have earned during the remainder of the contract term had he been permitted to continue under such contract, and less all of his necessary expenses incurred in the performance of his duties under such contract, and also less

such sums of money which he, by the use of due diligence, will be able to earn at other work during the period of time remaining in the contract term."

Evidence having an important bearing upon the matter of anticipation of profits accruing in the future was given by the two apparently disinterested witnesses, heretofore mentioned, both of whom were engaged in operating retail outlets for men's furnishings. Their testimony is in substantial agreement. One stated that he considered Collar-Bobs as a "novelty * * something that becomes a fad and are bought very freely for a while and the enthusiasm dies off and the people quit wearing them and go to something else. * * * They started out very good and after the soft rolled collar came into style, Collar-Bobs ceased to sell very freely." This witness testified that in 1946, and through June of 1947, he had purchased, wholesale, $691.-10 worth of Collar-Bobs; from then through 1948, he bought $324.25 worth; for the combined years of 1949 and 1950, $141 worth, and none for 1951 and 1952. He considered that the sale of Collar-Bobs had about run its course, although it probably lasted longer than most fads, but that "when soft roll collars came out the necessity of Collar-Bobs was gone and the fad went out and this Windsor knot with cutaway collar took its place." The witness testified that Collar-Bobs were designed to hold down the long pointed collar; that fads or styles in men's shirts change frequently and it was possible that Collar-Bobs might come into use again with the return of the long pointed collar, but that "it may be years" before this type of collar returned.

The testimony of the other retailer was similar in import. He said that the sale of Collar-Bobs in 1946 was "very good"; in 1947, "fairly good"; in 1948, "sales started dropping;" in 1949, sales "were going down, way down;" in 1950, sales were "bad" and in 1951, "still bad;" for the past three years, sales had been "very small." The witness described Collar-Bobs as "just a fad, * * * one of those things that just comes and goes. They go for a short time and then pass out of the picture."

There was evidence that at the time of the trial Collar-Bobs could be obtained in a number of retail stores, but there was no contradiction of the testimony that the article was in the nature of a fad or novelty and that its sale was largely dependent upon the style and shape of shirt collars which might be in vogue or style at any particular time.

■ We are here concerned with the "rule of certainty" applicable to a recovery of "future profits" as damages for breach of contract. Originally no recovery of damages for such profits was allowed by reason of their speculative nature. When a recovery therefor was recognized it was in a sense coupled with the stated restriction that such profits must be proved with "certainty." McCormick on Damages, § 25; Griffin v. Colver, 1858, 16 N.Y. 489, 69 Am.Dec. 718. This "rule of certainty" has been given numerous and perhaps varying interpretations. A distinction has been made "between the measure of proof necessary to establish the fact that (a Plaintiff) has sustained some damage, and the measure of proof necessary to enable the jury to fix the amount." It is said that, "while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show *the extent of the damages as a matter of just and reasonable inference,* although the result be only approximate." Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248, 250, 75 L.Ed. 544.

The rule stated in the American Law Institute's Restatement of the Law of Contracts, Section 331(1) is that, "Damages are recoverable for losses caused or for profits and other gains prevented by the breach only to the extent that the evidence affords a sufficient basis for estimating their amount in money with *reasonable certainty.*"

Discussions of the "rule of certainty" and its various applications are contained in McCormick on Damages, §§ 25–32; Williston on Contracts, §§ 1345–1345a–

1346; Corbin on Contracts, §§ 1020–1028, and a Note appearing in 64 Harvard Law Review 317, styled "The Requirement of Certainty in the Proof of Lost Profits." The report of the Supreme Court in Southwest Battery Corporation v. Owen, 131 Tex. 423, 115 S.W.2d 1097, contains an extensive collation of authorities upon the point, which need not again be set out here.

The most serious defect in appellee's proof and one which is fatal to the judgment is the failure to establish facts from which it could reasonably be inferred that profits over the contractual period of twenty years would be realized. When we consider the nature of the business as shown by the undisputed evidence, one can hardly say that a showing of a profit in 1948 indicates that a profit will in all proba-. bility result from operations in the year 1967 or the year 1957, for that matter. In addition to showing the term of the contract, there must be a showing of reasonable probability of profit during such term. In short term contracts such showing is generally apparent and in numerous reported cases, it appears that the term had expired prior to the time of the trial of the case. However, in case of long term contracts, probability of profits for periods of time in the future may present a more difficult problem of proof, but it must nevertheless be shown. The rule of certainty so requires, and if the period of reasonable probability of profits be shorter than the contract term, the recovery of "lost profits" must be limited thereto. Palmer v. Connecticut R. & Light Co., 311 U.S. 544, 61 S.Ct. 379, 85 L.Ed. 336. Although the reasonable probability of continuing profits is a matter of proof, this factor was seemingly assumed rather than proved in this case. This renders the verdict fatally defective as the speculations and conjectures of either witnesses or jurymen can not supply the deficiency of proof. Chicago Life Ins. Co. v. Tiernan, 8 Cir., 263 F. 325.

We do not mean to say that a history of six months past profits would support only a recovery of six months future profits, as we recognize the legitimate scope of the jury's discretion. It does, however, become this Court's duty to say whether or not a jury's verdict has exceeded the limits of ligitimate inference or reasonable certainty and stands without basis other than conjecture and guesswork. As above stated, long term contracts, such as the one now before us, present a more complicated problem than do short term contracts. Here we have even the matter of the uncertainty of the continuance of a human life until the end of the contract time. (It appears that Forrest was fifty-four years old at the time of trial.) Probable change in cconomic bases and conditions, as well as the uncertainties and cycles of clothing and apparel styles are involved. An admittedly difficult problem of proof is presented. Palmer v. Conn. Ry. & Lighting Co., 311 U.S. 544, 61 S.Ct. 379, 85 L.Ed. 336. There is danger that a jury may misunderstand the quality of evidence upon which they may properly base a verdict. Of course, the standards of proof required by law must be met before one man's money or property is taken and set over to another. However, it may be that jury misunderstandings and mistakes may be avoided by an additional instruction to the jury. Under the provisions of Rules 272 and 277 of the Texas Rules of Civil Procedure, we do not believe it would be objectionable, and it might prove of benefit to the members of the jury to further instruct them that in estimating the damages which have accrued since the breach of the contract, if any, including those which may result or accrue in the future, if any, they shall award as damages, if any they believe to exist, only such amount as is established by reasonable inference from the evidence adduced before them, and they should not consider nor include in their findings damages which are remote, speculative or based upon conjecture and guesswork. Thomsen v. Cayser, 243 U.S. 66, 37 S.Ct. 353, 61 L. Ed. 597; McCormick on Damages, § 26.

Having held that the evidence does not support the award of damages contained in the judgment and that the same is patently excessive, it follows that a reversal of the judgment and remand of the cause

must follow. We have sufficiently indicated our views upon matters which will probably arise upon a retrial of the case. It is incumbent upon the plaintiff under the "rule of certainty" to bring forward the most convincing evidence available to support his theory of damages. Often mere opinion and estimate will not suffice. Central Coal & Coke Co. v. Hartman, 8 Cir., 111 F. 96. Other matters discussed in the briefs need not arise upon another trial and henceforth discussion is pretermitted.

The judgment of the trial court is reversed and the cause remanded for new trial.

Reversed and remanded.