**William B. BIRGE et al., Appellants,**

**v.**

**TOPPERS MENSWEAR, INC., Appellee.**

**No. 17670.**

Court of Civil Appeals of Texas, Dallas.

Oct. 1, 1971.

Rehearing Denied Oct. 29, 1971.

**82**

Ralph Elliott, Elliott & Nall, Sherman, for appellants.

Jack G. Kennedy, Kennedy & Minshew, Professional Corp., Sherman, for appellee.

BATEMAN, Justice.

This is a suit for damages by the appellee Toppers Menswear, Inc. against its landlords William B. Birge and Mrs. Katherine B. Collie for alleged breach of a written lease. Appellee recovered judgment upon a jury verdict, and the landlords appeal.

The lease was dated April 1, 1967, and was for a term of five years with three renewal options of five years each given the tenant. The purpose stated was for the operation of a retail men's clothing store. Section 4 provided that the "lessors agree to keep the roof, foundation and outer walls of the said premises in proper state

of repair at their expense, including plate glass, during the period of this lease." The lessee agreed to maintain the building in all other respects.

The leased premises were on the north side of the courthouse square in Sherman, Texas. There is some confusion in the testimony as to whether these premises constituted a separate building or approximately half of a larger building. For the purposes of this opinion we adopt the latter view and the leased premises will be considered as approximately the east half of the building, the west half being occupied by Zale's Jewelers. The entire building was built at one time, and the two stores were separated by an inside wall. The building was owned by appellants but managed by the Merchants & Planters National Bank of Sherman, as their agent. Adjoining the Zale portion of the building on the west was the Keith Building, occupied by the M. & M. Cafe, and immediately west of that cafe was the Walters-Bitting Building occupied by "Levine's."

On the night of January 20, 1970 the Keith Building and part of the Walters-Bitting Building collapsed, damaging the west wall of the Zale portion of appellants' building; and several days later the removal of the rubble and debris caused further damage to it. On the next day, January 21, the Chief Building Inspector of the City of Sherman ordered appellee to close its store until an inspection could be made. Shortly thereafter, appellee reopened for ten days or two weeks. Within a few days the City Manager of Sherman informed Zale's manager and appellee that the building occupied by them was unsafe and that they would have to vacate it immediately. Appellee was never thereafter permitted to reoccupy the building.

In response to the special issues submitted to them, the jury found: (1) that the outer walls of the leased premises were in need of repair; (2) that appellants failed to repair the outer walls, (3) which has caused appellee to be deprived of the occu-

pancy, use and enjoyment of the leased premises; (4) that appellee has suffered damages naturally and proximately resulting from such deprivation; (5) that the building in which the premises leased to appellee are located is unsafe in its present condition. The jury (6) did not find from a preponderance of the evidence that the building could not be repaired so as to be made safe without undertaking repairs amounting to substantial reconstruction thereof, or (7) that to repair the building would cost in excess of fifty per cent of its physical value, or (8) that the building has been damaged in excess of fifty per cent of its physical value. Special Issue No. 9 and the answer of the jury thereto were as follows:

"From a preponderance of the evidence what sum of money, if any, do you find would reasonably compensate plaintiff for such damages, if any, that may have been suffered by it as a natural and proximate result of its being deprived of its right to occupy, use and enjoy the leased premises, if you have so found in answering Special Issue No. 3:

Answer separately in dollars and cents, if any, with respect to each of the following elements:

1. The reasonable present cash market value of the lease in question for its unexpired term.

Answer  $24,400.00

2. Loss of profits, if any, which plaintiff could reasonably have expected to earn from the continued operation of its business in the leased premises during the unexpired term of the lease in question.

Answer    $340,000,000
    17 yrs @ $20,000.00 per yr."

In its judgment dated October 16, 1970, the trial court found the award of $340,-000 for lost profits to be excessive by $157,560,* but rendered judgment for the difference of $182,440 plus the $24,400 found as the reasonable present cash market value of the lease, or a total of $206,840, with interest and costs.

A careful examination of the statement of facts reveals at least some evidence to support the jury's findings in response to Special Issues Nos. 1 through 8. Appellants' expert witnesses told of the extreme old age of the building, the antiquated foundation, the "leached out" mortar between the bricks, the poor composition of the bricks, the separation of some of the walls, and expressed the opinion that the entire building should be demolished. They did admit, however, that it could be repaired, but at great cost. Appellee's expert witness testified that in his opinion the Zale portion was unsafe and should be razed, but that appellee's portion suffered no damage requiring substantial reconstruction and could be repaired and made safely usable at a cost of approximately $25,000.

The City Council adopted numerous ordinances in the period from April 13, 1970 to July 13, 1970, at first authorizing the Chief Building Inspector, on recommendation of the City's consulting engineer, to direct abatement, demolition or other action, and later modifying the Inspector's order of demolition, and finally ordering that the unsafe condition and hazard shall be "abated" within sixty days.

The building did not comply with the City's building code in effect at the time in question. This code required that if the repair of a building would cost more than 50 per cent of its then physical value the building should be made to conform to the requirements of the code for new buildings. It being undisputed that this building could not be repaired to so comply, the question was whether it could be so repaired as to make it safely usable at a cost of less than 50 per cent of its then physical value.

---

* Appellee had pled that the $340,000 was subject to "a fair discount" and only sued for $182,-440 for lost profits.

Under date of June 8, 1970, while this suit was pending, appellee's attorneys wrote appellants' attorneys that appellee had elected to exercise all three options to renew the lease, extending it seventeen more years.

By their first four points of error on appeal, appellants complain of the submission of the damage issue (No. 9) on the grounds (1) that recovery of lost profits plus the reasonable cash value of the lease would result in a double recovery; (2) that since only *net profits* could be recovered, and the evidence thereof was insufficient, the court erred in submitting the issue; (3) that since the evidence of appellee's damage consisted of speculative conjectures projected over a period of seventeen years in the future, and was thus insufficient, the court erred in submitting the issue; and (4) that since appellee is required by law to mitigate its damages the court erred in submitting Special Issue No. 9 over appellants' objections that they were denied this right of mitigation by the wording of the issue confining the inquiry to "the leased premises." Appellants objected to Special Issue No. 9, insofar as loss of profits is concerned, "for the reason that any such loss of profits would necessarily be based on speculation and conjecture"; also because the loss of profits is limited to the business in the leased premises during the unexpired term of the lease and does not "allow the jury to consider future business, which might be done by plaintiff, which if it made a profit, would as a matter of law mitigate its damages."

■ Generally, the correct measure of damages which a tenant is entitled to recover of a landlord who has breached his covenant to repair is "the difference between the market rental value of the leasehold for the unexpired term of the lease and reserved rentals stipulated therein." Langham's Estate v. Levy, 198 S.W.2d 747, 756 (Tex.Civ.App., Beaumont 1946, writ

ref'd n. r. e.); 51C C.J.S. Landlord & Tenant § 247(2), p. 644, citing Rainwater v. McGrew, 181 S.W.2d 103 (Tex.Civ.App., Waco 1944, writ ref'd w. o. m.).

■ Damages for loss of anticipated profits may be recovered in such a case if contemplated by the parties. 35 Tex.Jur. 2d, Landlord and Tenant, § 90, p. 582; Midkiff v. Benson, 235 S.W. 292, 294 (Tex.Civ.App., El Paso 1921, no writ); Oscar v. Sackville, 253 S.W. 651, 653 (Tex.Civ.App., Austin 1923, writ ref'd).

■ However, as contended under appellants' first point of error, the tenant cannot recover lost profits and the market value of his lease also, for such would allow him a double recovery. As stated in Oscar v. Sackville, supra:

"To permit a recovery for the loss of profits, and also an additional recovery for the difference in the rental value of the premises, in the condition they were and in the condition they should have been if the heating plant had been adequate, would allow a double recovery, since appellant would be made whole under her contract when she recovered the loss of profits to her business, without regard to the rental value of the leased premises."

See also 52 C.J.S. Landlord & Tenant § 461(4)b, p. 341; and Weiss v. Mitchell, 58 S.W.2d 165, 166 (Tex.Civ.App., Dallas 1933, writ dism'd).

The first point of error is sustained.

Appellants contend under Point No. 3 that the evidence offered in support of the second element of Special Issue No. 9 consisted of speculative conjectures projected over a period of seventeen years in the future and was thus legally insufficient to support the submission of the issue on lost profits as damages.

Much has been written on this subject, and the authorities are not completely har-

monious, but we think the pertinent rules have been fairly well settled, as follows:

■ 1. A tenant who has been wrongfully evicted, or his possession wrongfully interfered with, may recover lost profits as damages where such loss is shown to be the natural and probable consequence of the act or omission complained of, but not where such profits are dependent upon uncertain and changing conditions. Southwest Battery Corporation v. Owen, 131 Tex. 423, 115 S.W.2d 1097 (1938).

■ 2. Such damages are allowable where the basis or data for ascertaining them is reasonably certain. Graham Hotel Co. v. Garrett, 33 S.W.2d 522, 525 (Tex. Civ.App., El Paso, 1930, writ dism'd).

■ 3. If proof of lost profits is to be made by opinions or estimates of loss, these must be predicated upon factual data derived from previous operation of such business; e. g., previous profits earned, and similar facts and circumstances which afford a basis for the computation of such probable losses. Silberstein v. Laibovitz, 200 S.W.2d 647, 650 (Tex.Civ.App., Austin 1947, no writ), and cases cited therein.

■ 4. While the law does not exact absolute certainty as to the amount of such lost profits, no recovery can be had therefor where it is uncertain whether any profits at all would have been made. Central Freight Lines, Inc. v. York, 135 S.W. 2d 186, 188 (Tex.Civ.App., Austin 1939, no writ); Southwest Battery Corporation v. Owen, 131 Tex. 423, 115 S.W.2d 1097, 1099 (1938); Bagby v. Hodge, 297 S.W. 882 (Tex.Civ.App., Austin 1927, no writ).

■ 5. In the case of a long term contract, as in this case, while the probability of profits for the entire term may present a difficult problem of proof, facts must nevertheless be established from which it can reasonably be inferred that profits over the contractual period of time will be realized. Schoenberg v. Forrest, 253 S.W.

2d 331, 335 (Tex.Civ.App., San Antonio 1952, no writ).

■ 6. To warrant the recovery of lost profits, the proof must not be in the realm of conjecture, speculation or opinion not founded on facts and the profits must be capable of being measured or ascertained on a reasonable basis. Fireside Marshmallow Co. v. Frank Quinlan Const. Co., 213 F.2d 16 (Cir. 8, 1954).

Appellee's manager, Mike Mitchell, testified that Levine's Store and Zale's Jewelers leased the only other available space in downtown Sherman, leaving appellee no place to move to; that the first year of its operation, in the leased premises, with gross sales of $141,000, resulted in a loss of $4,490; that in the second year he had gross sales of $241,000 and a profit of $15,800; that in the third year he had gross sales of $316,000 and profits of $24,400;. that in the first quarter of the current year (October, November and December, 1969) with gross sales of $140,000 their net profit was $25,000. He testified further that a successful operation of a men's clothing store had been built at this location, as his predecessor had been there nearly twenty years; that appellee had expended approximately $28,000 on improvements to the premises and $25,000 in advertising its business at that particular location, and that a conservative estimate of the profits for the next seventeen years would be $20,000 a year. He also testified that appellee was putting in a new store at the new Sher-Den Mall, between Sherman and Denison, which was intended to be an additional location. This was, in substance, all the jury had before it as a basis for its answer to the second element of Special Issue No. 9.

■ A careful analysis of the evidence in the light of the foregoing rules convinces us that the evidence lacks that certainty necessary to warrant submission of that part of the issue. Appellee takes for granted, and we are asked to assume, that merely because in the summer of 1970

there was no comparable space available to appellee in downtown Sherman such condition would continue for seventeen years in the future. Appellee also takes the position that it was under no duty to do what it could to find space in the business district which, while perhaps not as suitable as space in appellants' building, would probably enable it to do business at a profit and thus at least mitigate its loss; that since it could not have space in all respects as desirable as appellants' building it would simply cease doing business in Sherman and let appellants replace all of the profits it might hope to have made if appellants had not breached the lease. We do not agree with this contention.

Moreover, we are not entirely satisfied that Mitchell's testimony as to "profits" made in the first three years of appellee's occupancy of the leased premises was sufficient, in the absence of its books or other records of gross sales, cost of merchandise, and operating expenses, to provide the necessary factual data upon which to predicate his opinion or estimate of future profits for seventeen years. His statements "are essentially * * * inferences or conclusions supported by no disclosed adequate factual data." Texas & N. O. R. Co. v. Wood, 166 S.W.2d 141, 147 (Tex.Civ.App., San Antonio 1942, no writ).

Accordingly, we sustain Point No. 3.

In view of what we have said above, we also sustain appellants' Point No. 13, that the award of damages was excessive and unreasonable under the circumstances.

We also sustain Point of Error No. 4, which complains of the submission of Special Issue No. 9 because it confined the jury to a consideration of appellee's operations over the next seventeen years in the "leased premises." A tenant, deprived of the use of the leased premises by his landlord's breach of a covenant to repair, owes a duty to prevent or minimize his damages, as far as he can in the exercise of reasonable diligence and due care. The law does not permit such a tenant to sit idly by while his damages increase from month to month and from year to year without making some reasonable effort to put a stop to the damages, or at least to mitigate them. Yet, that is what this verdict and judgment allow. Under the circumstances of this case, appellee would be expected to move its business to another location and make a reasonable effort to conserve its business and make a profit therefrom. 49 Am.Jur.2d, Landlord and Tenant, § 849, p. 816. As said in Sade v. Staley, 212 F.Supp. 631, 632 (U.S.Dist.Ct., D.C.1963):

"It is well established as a fundamental and elementary principle that a person who is injured by a breach of contract must take reasonable steps to mitigate his damages. He may not sit back and watch his damages grow and seek to collect them when in his judgment they have become sufficiently enhanced. He must use appropriate means to cut off the damages as much as possible."

Appellee argues that appellants waived the right to complain of Special Issue No. 9 in this respect by not pleading the duty to mitigate damages under Rule 94, Vernon's Texas Rules of Civil Procedure, and by failing to tender a substantially correct instruction under Rule 279, T.R.C.P. In our opinion, the matter of mitigation of damages was not an affirmative defense required to be specially pled by Rule 94, T.R.C.P., and that when the matter of confining the issue to appellee's operations in "the leased premises" was properly called to the attention of the court, as it was here in appellants' objections to the charge and its motion for new trial, appellants fulfilled their duty in this respect. Moulton v. Alamo Ambulance Service, Inc., 414 S.W.2d 444 (Tex.Sup. 1967).

Appellants' Points of Error Nos. 5, 6, 7 and 8 complain of the submission of Special Issue No. 2 over their objections

inasmuch as the evidence showed their performance was rendered impossible, and the lease was frustrated, by the actions of the City and the necessity for reconstructing the building rather than repair it. These points are overruled for want of specific pleading of these affirmative defenses, Rule 94, T.R.C.P., and because no issues thereon were submitted or requested, Rule 279, T.R.C.P.; Ellis Drilling Corporation v. McGuire, 321 S.W.2d 911, 914 (Tex. Civ.App., Eastland 1959, writ ref'd n. r. e.).

By their Points of Error Nos. 9 through 12, appellants complain of the overruling of their motion for judgment notwithstanding the verdict. Under these points the following propositions are raised:

1. The lease provides that the total destruction of the building during the term of the lease shall operate to terminate the lease as to both parties, and the evidence shows that, for all practical purposes at least, the building was totally destroyed when the Keith Building collapsed and the rubble therefrom was removed. However, the jury findings were to the contrary, and we have held that they were supported by evidence. This proposition is therefore overruled.

2. The lease was terminated by appellee by its default in the payment of rent. Appellants did not plead this as an affirmative defense, and the matter is not mentioned in their motion for judgment notwithstanding the verdict. Rule 94, T. R.C.P. The contention is therefore overruled.

3. There is a provision in the lease that the lessors shall not be liable to the lessee due to the building being improperly constructed or out of repair. This refers to paragraph 6 of the lease, which is as follows:

"6. Lessors shall not be liable to the lessee, nor lessee's employees, customers or visitors, *for any damage to persons or property* due to the building, or any part or appurtenance thereof, being improperly constructed or being out of repair, or arising from a leaky roof or the leaking of gas, water, sewer, or stem [*sic*] pipes, or from electricity." (Italics ours.)

It is clear to us that this section of the lease exempts the appellants from liability only for damage to persons; i. e., personal injuries, or to property of appellee or its customers or visitors, and not from the liability asserted in this suit. Therefore this contention is overruled.

Points of Error Nos. 9 through 12 are overruled.

By their Point of Error No. 22 appellants say the court erred in requiring, over their objections, the appellant Katherine B. Collie to testify on cross-examination that she was the owner of other commercial buildings in downtown Sherman. Appellants argue that the obvious purpose of this was to picture Mrs. Collie as a person of great wealth, citing Walker v. Kellar, 218 S.W. 792, 797 (Tex.Civ.App., San Antonio 1920, no writ), and Coca Cola Bottling Co. of Fort Worth v. Tannahill, 235 S.W.2d 224 (Tex.Civ.App., Fort Worth 1950, writ dism'd). Appellee seeks to justify the admission of this testimony on the ground that Mrs. Collie's attorneys placed her on the stand merely to obtain sympathy from the jury by showing that she was an old, blind, widowed housewife, with no insurance on the building and completely dependent on others for the management of her property and that the complained of testimony was necessary, not to prejudice the jury or show her financial condition, but to negate the prejudice she had created in her own behalf and show that she was aware of the duties and responsibilities of a landlord.

We do not agree with appellee in this. All Mrs. Collie testified to in this respect on direct examination was that she was not a business woman but was a housewife and in this whole controversy she relied on the advice of the Merchants & Planters Bank, her structural engineer,

her contractor and her lawyer. We think appellants were entitled to show by her testimony that she was not aware of the details of the controversy, necessarily relying on others to handle them for her; otherwise, the jury would have been left to wonder why she did not testify in her own defense. We do not think this testimony, nor her advanced age and blindness, were sufficient to open the door to the objectionable testimony complained of under this point. We sustain the point.

■■■ By their Point of Error No. 28 appellants say that, since appellee's own evidence negated the necessity of any repair, and its claim, if any, was against the City, judgment should have been for appellants. It is true that appellee's manager, Mike Mitchell, testified that the portion of the building occupied by appellee had not been damaged and was not in need of repair, but all of the other witnesses on both sides, who were asked about the matter, testified that the outer walls were in need of repair, and the jury so found in answer to Special Issue No. 1. Mitchell's testimony on this matter was only an opinion and could do no more than raise a fact issue. Broussard v. Moon, 431 S.W.2d 534, 537 (Tex.Sup.1968); Petit v. Klinke, 152 Tex. 142, 254 S.W.2d 769, 772 (1953).

■■■ Moreover, this matter, or contention, was not brought to the attention of the trial court, is not distinctly set forth in the amended motion for new trial, and cannot be raised for the first time on appeal. Rule 374, T.R.C.P.; Burney v. Ibarra, 415 S.W.2d 517, 520 (Tex.Civ.App., San Antonio 1967, writ ref'd n. r. e.).

Point 28 is therefore overruled.

Appellants present several other points, many of which are procedural. As they relate to matters that probably will not arise on another trial, we pretermit discussion of them.

For the errors committed on the trial, as shown above, the judgment is reversed and remanded for a new trial.

Reversed and remanded.