**DOWNTOWN REALTY, INC.,**
**Appellant,**

v.

**509 TREMONT BUILDING,**
**INC., Appellee.**

No. A14–86–00817–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

March 24, 1988.

**310**

Andrew J. Mytelka, Galveston, for appellant.

Paul R. Stansell, James D. Bashline, Galveston, for appellee.

Before ROBERTSON, DRAUGHN and ELLIS, JJ.

## OPINION

DRAUGHN, Justice.

Downtown Realty, Inc. [Downtown Realty] appeals from a judgment in favor of appellee, 509 Tremont Building, Inc., [Tremont] in an action for breach of a commercial lease. The jury found that Downtown Realty's failure to repair heating and air conditioning equipment, as required by the lease, constituted a constructive eviction, and awarded $35,000 in damages to Tremont. Downtown Realty was awarded an offsetting $3000 for 509 Tremont's failure to remodel the leased property in a good and workmanlike fashion. The jury additionally found that Tremont did not breach the lease by failing to maintain liability and property insurance. We affirm the judgment of the trial court.

On July 13, 1982, Tremont entered into a lease agreement with Downtown Realty for use of the entire second floor, and for first floor access, of the property owned by Downtown Realty and located at 509 Tremont Street in Galveston. The initial term of the lease was five years, with two five-year options exercisable at Tremont's discretion. As provided by the lease, Tremont undertook substantial remodeling in order to render the leased space usable as a rooming house.

In October of 1983, the rooming house opened for business and operated at an average monthly profit of $1800 until May of 1984. During the month of May, the heating and air conditioning system failed. Tremont's inquiries revealed that the system was irreparable, and replacement would cost in excess of $20,000. The lease specified that "[a]ny expense for replacement of airconditioning [sic] and heating equipment in excess of $2000.00 in any one lease year shall be paid by Lessor."

Tremont orally notified Downtown Realty of the need for a replacement system on several occasions throughout the summer months, and informed Downtown Realty of its willingness to pay its share of the cost. On September 4, 1984, Downtown Realty received written notification of the needed

repairs. Written notification was also sent on November 9, November 30, and December 20, 1984. In each correspondence, Tremont stated its willingness to pay its share of the cost, its wish to continue the lease, and indicated the negative impact that the absence of heating and air conditioning had on the profitability of a rooming house in Galveston. Downtown Realty never responded to the requests for repairs, and no repairs were ever made to the heating and air conditioning system. However, despite the fact that the lack of heat and air conditioning was causing the business to operate at a loss, Tremont continued to pay rent.

In March of 1985, Galveston temperatures having already risen to the eighties, Tremont notified Downtown Realty that unless the needed repairs were made it would have no choice but to abandon the premises. Tremont again indicated its desire to continue the lease so that it might recoup its investment in the property. Downtown Realty's response was to demand payment of March rent. Having received no response to any of its requests for repairs, Tremont notified Downtown Realty on April 27, 1985, that it had been forced to abandon the premises and demanded payment for losses it had incurred.

Tremont did not renew liability and property insurance for the premises in October of 1984. Although a letter dated December 14, 1984, demanded that the insurance be renewed in accordance with the lease agreement, Downtown Realty never attempted to take possession of the property. Despite clear statements in all of Tremont's correspondence until April of 1985 that it considered the original lease to be in effect, Downtown Realty did not notify Tremont that it was considered a holdover tenant. In fact, Downtown Realty made no response to communications from Tremont. It continued to accept rent payments through March of 1985, and the record reflects that Downtown Realty continued to demand rent payments after Tremont had vacated the property.

■ In its third point of error, Downtown Realty complains of the jury's finding that the failure to repair the heating and air conditioning system constituted a constructive eviction of Tremont. Downtown Realty alleges that the finding is in error because Tremont did not abandon the premises within a reasonable period of time. The essential elements of constructive eviction are as follows: (1) An intention on the part of the landlord that the tenant shall no longer enjoy the premises, which intention may be inferred from the circumstance; (2) A material act by the landlord or those acting for him or with his permission that substantially interferes with the use and enjoyment of the premises for the purpose for which they are let; (3) The act must permanently deprive the tenant of the use and enjoyment of the premises; (4) The tenant must abandon the premises within a reasonable time after the commission of the act. *Metroplex Glass Center v. Vantage Properties*, 646 S.W.2d 263, 265 (Tex.App.—Dallas 1983, writ ref'd n.r. e.), citing *Stillman v. Youmans*, 266 S.W. 2d 913 (Tex.Civ.App.—Galveston 1954, no writ); and *Michaux v. Koebig*, 555 S.W.2d 171, 177 (Tex.Civ.App.—Austin 1977, no writ).

In special issue number five, the jury was instructed on these elements, including that requiring abandonment within a reasonable time. The jury was asked if Downtown Realty's "failure to replace the heating and air conditioning unit resulted in a constructive eviction of Plaintiff, 509 Tremont Building, Inc., from the leased premises"; they answered affirmatively.

Texas courts have not established any specific time period that, in constructive eviction cases, constitutes "a reasonable time" as a matter of law. Each case must be judged on its facts. *See Briargrove Shopping Center v. Vilar, Inc.*, 647 S.W. 2d 329, 335 (Tex.App.—Houston [1st Dist.] 1982, no writ) (three months was a reasonable time); and *Richker v. Georgandis*, 323 S.W.2d 90, 96–97 (Tex.Civ.App.—Houston 1959, writ ref'd n.r.e.) (abandonment after ten months considered reasonable).

■ Downtown Realty's only objection to special issue number five was that there was "no evidence that the Defendants [sic] have met the requirement of liability insur-

ance," which is irrelevant to the issue of constructive eviction. In fact, the record reflects that Downtown Realty's objection was "[n]ot so much that issue itself, but it's our position that even if you have a constructive eviction, you have got to have a damage issue related to constructive eviction." If there is evidence in the record to support the conclusion, then we must presume that the jury found seven months to have been a reasonable period of time for Tremont to have taken to abandon the premises. Tex.R.Civ.P. 279.

This court may not substitute its opinion for that of the trier of fact. *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 896 (1951); *Thompson v. Wooten*, 650 S.W.2d 499, 501 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.). The trier of fact is the sole judge of the credibility of the witnesses and the weight given their testimony. *Rego Co. v. Brannon*, 682 S.W.2d 677, 680 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

The evidence establishes that the parties agreed to a five-year lease term, with two five-year options, renewable at Tremont's discretion. Tremont had expended in excess of $28,000 to render the property suitable for a rooming house operation, with the expectation that it would have up to fifteen years to recover its investment. Viewing these facts in the light most favorable to the verdict, there is sufficient evidence to support the jury's finding of constructive eviction. Point of error number three is overruled.

In the second point of error, Downtown Realty complains that the trial court erred in overruling Downtown Realty's motion for new trial because the evidence was factually insufficient to support the jury's finding that Downtown Realty had breached the lease on September 20, 1984. In reviewing questions of factual insufficiency, the jury's finding must be upheld unless we find that the evidence is so weak, or the finding is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *Sheridan & Son*

*Co. v. Seminole Pipeline*, 731 S.W.2d 620, 623 (Tex.App.—Houston [1st Dist.] 1987, no writ).

■ Downtown Realty argues that it first received notification of a problem with the heating and air conditioning system by the September 4, 1984, letter from Tremont. It contends that, therefore, the finding that the breach occurred as of September 20, 1984, did not allow it "reasonable time after request" within which to make repairs, as is specified in special issue number one. However, the jury heard testimony from Tremont's witnesses that Downtown Realty had been notified orally of the need for repairs several times over the course of the summer of 1984. As the trier of fact, the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Rego*, 682 S.W.2d at 682. The verdict indicates the jury believed the testimony of Tremont's witnesses.

Additionally, the lease provides that in the event of default by Tremont, Tremont would be given fifteen days following written notification to completely cure its default. Thus, it was reasonable for the jury to apply that same time frame to Downtown Realty's duty to comply with its obligations under the lease. The jury apparently allowed Downtown Realty fifteen days from receipt of written notification to cure its default. Accordingly, the second point of error is overruled.

In point of error number one, Downtown Realty contends that the jury's finding that Tremont did not violate the lease is against the overwhelming weight of the evidence. The jury's finding on such a fact issue must be upheld unless it is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *In re King's Estate*, 244 S.W.2d at 661.

■ The jury found that Downtown Realty's failure to repair the heating and air conditioning system constituted a constructive eviction of Tremont. Constructive eviction can relieve the tenant of the obligation to continue paying rent under the terms of the lease. *Silberstein v. Lai-*

*bovitz,* 200 S.W.2d 647, 649 (Tex.Civ.App.—Austin 1947, no writ). *See also Joseph F. Davidow, M.D. v. Inwood North Professional Group,* 747 S.W.2d 373 (Tex.1988) (landlord's failure to make repairs breached warranty of habitability and relieved lessor of obligation to pay rent); *Ravkind v. Jones Apothecary,* 439 S.W.2d 470, 471 (Tex.Civ.App.—Houston [1st Dist.] 1969, writ ref'd n.r.e.) (finding of constructive eviction would have been a defense to suit against lessee for rent). It is inconceivable that a tenant would be relieved of such an essential term of the lease when constructively evicted, yet remain bound by other terms. Constructive eviction is brought about by the landlord's action, or inaction, which makes the premises unusable for the tenant's rental purpose. It is axiomatic that the evicting landlord will not be allowed to legally insulate itself by relying on the tenant's subsequent failure to comply with some other term of that same lease. Constructive eviction essentially terminates mutuality of obligation as to the lease terms, because the fundamental reason for the lease's existence has been destroyed by the landlord's conduct. Thus, Tremont's failure to maintain liability insurance after it had been constructively evicted cannot serve as a legal excuse to protect Downtown Realty from the consequences of its actions. That Tremont continued to pay rent during the time it was waiting for Downtown Realty to comply with its obligation to repair the heating and air conditioning system does not alter the fact that the lease terminated when Downtown Realty constructively evicted Tremont. Thus, the jury's finding that Tremont did not breach the lease was neither manifestly unjust nor erroneous when viewed in conjunction with its finding of constructive eviction. Point of error number one is overruled.

In points of error four, five and six, Downtown Realty complains of the damages awarded to Tremont by the jury. Downtown Realty alleges that the trial court erred in overruling its objection to the submission of the lost profits issue because the evidence was speculative. It further alleges that the amount awarded to Tremont for lost profit and for start-up expenses was excessive due to Tremont's own breach, and in light of the evidence presented.

The jury did not find that Tremont had breached its obligations under the lease, and since the jury found that Downtown Realty had constructively evicted Tremont, Downtown Realty could be held liable for lost profits proved with reasonable certainty. *Birge v. Toppers Menswear,* 473 S.W. 2d 79, 85 (Tex.Civ.App.—Dallas 1971, writ ref'd n.r.e.).

■ The law does not require absolute certainty as to the amount of lost profit. *Birge,* 473 S.W.2d at 85. "While damages may not be determined by mere speculation or guess, it will be enough if the evidence show *the extent of the damages as a matter of just and reasonable inference,* although the result be only approximate." *Schoenberg v. Forrest,* 253 S.W.2d 331, 334 (Tex.Civ.App.—San Antonio 1952, no writ), *quoting Story Parchment Co. v. Patterson Parchment Paper Co.,* 282 U.S. 555, 563, 51 S.Ct. 248, 250, 75 L.Ed. 544 (1931).

Tremont presented into evidence summaries of the books of the operation, and made the underlying documents available to Downtown and to the trial court for verification of their accuracy. The evidence before the jury included cancelled checks and receipts for the remodeling expenses, rental receipts from the opening of the rooming house until its close, and an accounting of Tremont's monthly operating expenses. There was certainly sufficient factual data from which the jury could ascertain lost profit with reasonable certainty. Point of error number four is overruled.

■ Tremont presented factual data to the jury showing lost profits of $70,000 for the initial lease term. The jury award of $25,000 is not excessive in light of that evidence. Accordingly point of error number five is overruled.

Tremont's witnesses testified that approximately $35,000 was spent on start-up costs. It admitted into evidence receipts and cancelled checks for $28,000 of those

costs. The jury awarded only $10,000 for start-up expenses. We do not find that award excessive or unreasonable given the evidence presented at trial. Point of error number six is overruled.

In point of error number seven, Downtown Realty complains that the jury's award of $3,000 to it for Tremont's un-workmanlike remodeling was inadequate and against the great weight of the evidence. Downtown Realty presented testimony that it would cost approximately $38,000 to make the Tremont Street property conform with the standard for the average commercial lease. However, none of Downtown Realty's witnesses had seen the property prior to Tremont's remodeling, nor could any witness identify what amount of this allegedly required $38,000 might be attributed to improper workmanship by Tremont. Given the uncertainty of the evidence, we cannot find the jury's award inadequate. Point of error number seven is overruled.

The judgment of trial court is affirmed.