FIDELITY MUTUAL LIFE
INSURANCE COMPANY,
Appellant,

v.

ROBERT P. KAMINSKY, M.D.,
P.A., Appellee.

No. B14–88–188–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 23, 1989.

Wesley S. Caddou, Houston, for appellant.

Michael Maness, Houston, for appellee.

Before MURPHY, ROBERTSON and SEARS, JJ.

OPINION

MURPHY, Justice.

The issue in this landlord-tenant case is whether sufficient evidence supports the jury's findings that the landlord and appel-

lant, Fidelity Mutual Life Insurance Company ["Fidelity"], constructively evicted the tenant, Robert P. Kaminsky, M.D., P.A. ["Dr. Kaminsky"] by breaching the express covenant of quiet enjoyment contained in the parties' lease. We affirm.

Dr. Kaminsky is a gynecologist whose practice includes performing elective abortions. In May 1983, he executed a lease contract for the rental of approximately 2,861 square feet in the Red Oak Atrium Building for a two year term which began on June 1, 1983. The terms of the lease required Dr. Kaminsky to use the rented space solely as "an office for the practice of medicine." Fidelity owns the building and hires local companies to manage it. At some time during the lease term, Shelter Commercial Properties ["Shelter"] replaced the Horne Company as managing agents. Fidelity has not disputed either management company's capacity to act as its agent.

The parties agree that: (1) they executed a valid lease agreement; (2) Paragraph 35 of the lease contains an express covenant of quiet enjoyment conditioned on Dr. Kaminsky's paying rent when due, as he did through November 1984; Dr. Kaminsky abandoned the leased premises on or about December 3, 1984 and refused to pay additional rent; anti-abortion protestors began picketing at the building in June of 1984 and repeated and increased their demonstrations outside and inside the building until Dr. Kaminsky abandoned the premises.

When Fidelity sued for the balance due under the lease contract following Dr. Kaminsky's abandonment of the premises, he claimed that Fidelity constructively evicted him by breaching Paragraph 35 of the lease. Fidelity apparently conceded during trial that sufficient proof of the constructive eviction of Dr. Kaminsky would relieve him of his contractual liability for any remaining rent payments. Accordingly, he assumed the burden of proof and the sole issue submitted to the jury was whether Fidelity breached Paragraph 35 of the lease, which reads as follows:

*Quiet Enjoyment.*

Lessee, on paying the said Rent, and any Additional Rental, shall and may peaceably and quietly have, hold and enjoy the Leased Premises for the said term.

█ A constructive eviction occurs when the tenant leaves the leased premises due to conduct by the landlord which materially interferes with the tenant's beneficial use of the premises. *See Downtown Realty, Inc. v. 509 Tremont Bldg.*, 748 S.W.2d 309, 313 (Tex.App.—Houston [14th Dist.] 1988, n.w.h.); *McNabb v. Taylor Oil Field Rental Co.*, 428 S.W.2d 714, 716 (Tex.Civ. App.—San Antonio 1968, writ ref'd n.r.e.). Texas law relieves the tenant of contractual liability for any remaining rentals due under the lease if he can establish a constructive eviction by the landlord. *Downtown Realty, Inc.*, 748 S.W.2d at 312; *Ravkind v. Jones Apothecary, Inc.*, 439 S.W.2d 470, 471 (Tex.Civ.App.—Houston [1st Dist.] 1969, writ ref'd n.r.e.).

█ In order to prevail on his claim that Fidelity constructively evicted him and thereby relieved him of his rent obligation, Dr. Kaminsky had to show the following: 1) Fidelity intended that he no longer enjoy the premises, which intent the trier of fact could infer from the circumstances; 2) Fidelity, or those acting for Fidelity or with its permission, committed a material act or omission which substantially interfered with use and enjoyment of the premises for their leased purpose, here an office for the practice of medicine; 3) Fidelity's act or omission permanently deprived Dr. Kaminsky of the use and enjoyment of the premises; and 4) Dr. Kaminsky abandoned the premises within a reasonable period of time after the act or omission. *E.g., Downtown Realty, Inc.*, 748 S.W.2d at 311; *Metroplex Glass Center, Inc. v. Vantage Properties, Inc.*, 646 S.W.2d 263, 265 (Tex.App.—Dallas 1983, writ ref'd n.r.e.); *Steinberg v. Medical Equip. Rental Serv., Inc.*, 505 S.W.2d 692, 696–97 (Tex.App.—Dallas 1974, no writ); *Ravkind*, 439 S.W.2d at 472; *Richker v. Georgandis*, 323 S.W.2d 90, 95–96 (Tex.Civ.App.—Houston 1959, writ ref'd n.r.e.); *Stillman v. Youmans*, 266 S.W.2d 913 (Tex.Civ.App.—Galveston 1954, no writ).

During oral submission of this case, Fidelity conceded it did not object to an instruction or the four special issues which tracked the foregoing elements. By answering each special issue affirmatively, the jury found that Dr. Kaminsky had established each element of his constructive eviction defense. The trial court entered judgment that Fidelity take nothing on its suit for delinquent rent.

Fidelity raises four points of error. Each recites that the trial court erred by denying Fidelity's Motion for Judgment Non Obstante Veredicto or to Disregard Jury Findings. Each claims, in the alternative, that the evidence is factually insufficient to support the jury's verdict and that the trial court therefore erred by denying Fidelity's motion for a new trial. Tex.R. App.P. 74(d) permits combining these contentions in a single point of error and Tex. R.App.P. 74(p) requires us to construe briefing rules liberally. Nonetheless, this court determines whether a point challenges the legal or factual sufficiency of the evidence, or both, by analyzing both the wording of the point and the record references and argument under the point. Tex. R.App.P. 74(d); *accord, Pool v. Ford Motor Co.*, 715 S.W.2d 629, 633 (Tex.1986) (opinion on motion for rehearing), quoting *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex.1982) (factual sufficiency); *O'Neil v. Mack Trucks, Inc.*, 542 S.W.2d 112, 114 (Tex.1976), *opinion reissued*, 551 S.W.2d 32 (Tex.1977) (legal sufficiency). The test is whether the point, record references and argument sufficiently direct our attention to the nature of the complaint made. Tex.R.App.P. 74(d).

Fidelity's first point of error relies on *Angelo v. Deutser*, 30 S.W.2d 707 (Tex.Civ. App.—Beaumont 1930, no writ), *Thomas v. Brin*, 38 Tex.Civ.App. 180, 85 S.W. 842 (1905, no writ) and *Sedberry v. Verplanck*, 31 S.W. 242 (Tex.Civ.App.1895, no writ). These cases all state the general proposition that a tenant cannot complain that the landlord constructively evicted him and breached a covenant of quiet enjoyment, express or implied, when the eviction results from the actions of third parties acting without the landlord's authority or permission. Fidelity insists the evidence conclusively establishes: a) that it did nothing to encourage or sponsor the protestors and; b) that the protestors, rather than Fidelity or its agents, caused Dr. Kaminsky to abandon the premises. Fidelity concludes that reversible error resulted because the trial court refused to set aside the jury's answers to the special issues and enter judgment in Fidelity's favor and because the trial court denied its motion for a new trial. We disagree.

Although this point of error appears to challenge both the legal and factual sufficiency of the evidence, we have construed it as raising only a "no evidence" or legal sufficiency challenge for two reasons. First, Fidelity relies on record references to "undisputed" evidence and bases its arguments on "established" rules of law. After reviewing Fidelity's oral and written arguments and its references to the record, we conclude that Fidelity essentially disputes the legal sufficiency of the evidence to show that *its own* conduct constructively evicted Dr. Kaminsky. This involves only a question of law in the instant case and thereby fails to raise a factual sufficiency challenge. *See Pool*, 715 S.W.2d at 633; *Holley*, 629 S.W.2d at 696. In addition, a properly preserved [1] complaint of the denial of a motion for judgment non obstante veredicto traditionally raises only a "no evidence" challenge. *E.g., Northwest Mall, Inc. v. Lubri-Lon Int'l*, 681 S.W.2d 797 (Tex.App.–Houston [14th Dist.] 1984, writ ref'd n.r.e.).

Accordingly, this court must apply the following standard of review: we will consider only the evidence, and reasonable inferences drawn from that evidence, which supports the jury's verdict and must disregard all contrary evidence and inferences. *Sherman v. First Nat'l Bank*, 760 S.W.2d 240, 241 (Tex.1988); *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987);

---

1. Fidelity preserved its "no evidence" point in its Motion for Judgment Non Obstante Veredicto and To Set Aside the Jury's Findings as well its Motion for a New Trial. *See Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 822 (Tex.1985).

*King v. Bauer,* 688 S.W.2d 845, 846 (Tex. 1985); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). This court must sustain a legal sufficiency point of error when the record discloses that: 1) the evidence conclusively establishes the opposite of a vital fact; 2) there is complete absence of evidence of a vital fact; 3) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; or 4) there is no more than a scintilla of evidence to prove a vital fact. *Blevco Energy, Inc. v. Getty Oil Co.,* 32 Tex.Sup.Ct.J. 96, 96 (Dec. 7, 1988), citing Calvert, *No Evidence and Insufficient Evidence Points of Error,* 38 TEX.L.REV. 361 (1960). But when more than a scintilla of evidence supports the jury's findings, we have no choice but to overrule a "no evidence" point of error. *Sherman,* 760 S.W. 2d at 242; *Stafford,* 726 S.W.2d at 16; *see In re King's Estate,* 150 Tex. 662, 664, 244 S.W.2d 660, 661 (1951). After applying this standard of review we conclude the evidence is legally sufficient to support the jury's findings.

The protests took place chiefly on Saturdays, the day Dr. Kaminsky generally scheduled abortions. During the protests, the singing and chanting demonstrators picketed in the building's parking lot and inner lobby and atrium area. They approached patients to speak to them, distributed literature, discouraged patients from entering the building and often accused Dr. Kaminsky of "killing babies." As the protests increased, the demonstrators often occupied the stairs leading to Dr. Kaminsky's office and prevented patients from entering the office by blocking the doorway. Occasionally they succeeded in gaining access to the office waiting room area.

Dr. Kaminsky complained to Fidelity through its managing agents and asked for help in keeping the protestors away, but became increasingly frustrated by a lack of response to his requests. The record shows that no security personnel were present on Saturdays to exclude protestors from the building, although the lease required Fidelity to provide security service on Saturdays. The record also shows that Fidelity's attorneys prepared a written statement to be handed to the protestors soon after Fidelity hired Shelter as its managing agent. The statement tracked TEX. PENAL CODE ANN. § 30.05 (Vernon Supp. 1989) and generally served to inform trespassers that they risked criminal prosecution by failing to leave if asked to do so. Fidelity's attorneys instructed Shelter's representative to "have several of these letters printed up and be ready to distribute them and verbally demand that these people move on and off the property." The same representative conceded at trial that she did not distribute these notices. Yet when Dr. Kaminsky enlisted the aid of the Sheriff's office, officers refused to ask the protestors to leave without a directive from Fidelity or its agent. Indeed, an attorney had instructed the protestors to remain *unless* the landlord or its representative ordered them to leave. It appears that Fidelity's only response to the demonstrators was to state, through its agents, that it was aware of Dr. Kaminsky's problems.

■ Both action and lack of action can constitute "conduct" by the landlord which amounts to a constructive eviction. *E.g., Downtown Realty Inc.,* 748 S.W.2d at 311; 49 TEX.JUR.3d *Landlord & Tenant* § 288. In *Steinberg v. Medical Equip. Rental Serv., Inc.,* 505 S.W.2d 692 (Tex.Civ.App.— Dallas 1974, no writ) accordingly, the court upheld a jury's determination that the landlord's failure to act amounted to a constructive eviction and breach of the covenant of quiet enjoyment. 505 S.W.2d at 697. Like Dr. Kaminsky, the tenant in *Steinberg* abandoned the leased premises and refused to pay additional rent after repeatedly complaining to the landlord. The *Steinberg* tenant complained that Steinberg placed trash bins near the entrance to the business and allowed trucks to park and block customer's access to the tenant's medical equipment rental business. The tenant's repeated complaints to Steinberg yielded only a request "to be patient." *Id.* Fidelity responded to Dr. Kaminsky's complaints in a similar manner: although it acknowledged his problems with the protestors, Fidelity, like Steinberg, effectively did nothing to prevent the problems.

This case shows ample instances of Fidelity's failure to act in the fact of repeated requests for assistance despite its having expressly covenanted Dr. Kaminsky's quiet enjoyment of the premises. These instances provided a legally sufficient basis for the jury to conclude that Dr. Kaminsky abandoned the leased premises, not because of the trespassing protestors, but because of Fidelity's lack of response to his complaints about the protestors. Under the circumstances, while it is undisputed that Fidelity did not "encourage" the demonstrators, its conduct essentially allowed them to continue to trespass. The general rule of the *Angelo, Thomas* and *Sedberry* cases, that a landlord is not responsible for the actions of third parties, applies only when the landlord does not permit the third party to act. *See e.g., Angelo,* 30 S.W.2d at 710 ["the act or omission complained of must be that of the landlord and not merely of a third person *acting without his authority or permission*" (emphasis added)]. We see no distinction between Fidelity's lack of action here, which the record shows resulted in preventing patients' access to Dr. Kaminsky's medical office, and the *Steinberg* case where the landlord's inaction resulted in trucks' blocking customer access to the tenant's business. We overrule the first point of error.

Fidelity's remaining three points of error, which it has grouped for purposes of discussion, also combine challenges to the legal and factual sufficiency of the evidence. Here its arguments and record references, as well as its arguments during oral submission, show that it has challenged the factual sufficiency of the evidence to support the jury's answers to three of the four special issues. *See Pool,* 715 S.W.2d at 633. We review questions of factual sufficiency by analyzing all the evidence, both supporting and conflicting, to determine whether a finding by the jury is against the great weight and preponderance of the evidence. *Lofton v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex. 1986); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951). We have no authority to set aside a jury's finding unless it is

so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *In re King's Estate,* 150 Tex. at 666, 244 S.W.2d at 662. In applying this standard of review, we must be mindful that only the jury may determine the credibility of the witnesses and the weight to accord their testimony. *Rego v. Brannon,* 682 S.W.2d 677, 680 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

The challenged special issues establish the first three elements of constructive eviction: intent; act or omission; and permanent deprivation of the premises. In point of error two, Fidelity raises a two-pronged challenge to the factual sufficiency of the evidence to show it intended that Dr. Kaminsky no longer enjoy the leased premises. Fidelity disputes the evidence of its wrongful intent on the grounds that it at least attempted to manage the protestors by drafting the letter threatening the protestors with trespass prosecutions and giving the letter to Dr. Kaminsky to distribute. Fidelity also argues that Dr. Kaminsky acknowledged its lack of "encouragement" or "sponsorship" of the protestors. As we have noted above, the jury was entitled to infer Fidelity's intent from all the circumstances in this case. *Downtown Realty, Inc.,* 748 S.W.2d at 311; *Richker,* 323 S.W.2d at 98; *Stillman,* 266 S.W.2d at 916. After reviewing all the evidence on the issue of Fidelity's intent, we conclude that neither Fidelity's having made some effort, nor its lack of sponsorship or encouragement of the protestors, renders the jury's finding so against the great weight and preponderance of the evidence as to be manifestly unjust. *Cain,* 709 S.W.2d at 176; *In re King's Estate,* 150 Tex. at 666, 244 S.W.2d at 662. We overrule the second point of error.

Fidelity's third point of error disputes the factual sufficiency of the evidence to show that it committed a material act which substantially interfered with Dr. Kaminsky's use and enjoyment of the premises. Here Fidelity essentially raises the same contention we disposed of in its first point of error: that the record unequivocal-

ly establishes that Fidelity committed no act which would give rise to a constructive eviction because the protestors committed the acts which caused Dr. Kaminsky to leave. As we have already indicated, the landlord's acts *or omissions* can form the basis of a constructive eviction. *E.g., Steinberg,* 505 S.W.2d at 697. Special Issue Number Two, to which Fidelity offered no objection, asked whether Fidelity "committed a material act *or omission* if any, that substantially interfered with" Dr. Kaminsky's use and enjoyment of the premises. Having reviewed all the evidence, both supporting and contrary to the jury's affirmative answer to Special Issue Number Two, we find no basis for Fidelity's argument that the finding was so against the great weight and preponderance of the evidence as to be manifestly unjust. *Cain,* 709 S.W.2d at 176; *In re King's Estate,* 150 Tex. at 666, 244 S.W.2d at 662. We overrule the third point of error.

In its fourth point of error, Fidelity maintains the evidence is factually insufficient to support the jury's finding that its conduct permanently deprived Dr. Kaminsky of use and enjoyment of the premises. Fidelity essentially questions the permanency of Dr. Kaminsky's being deprived of the use and enjoyment of the leased premises. To support its contentions, Fidelity points to testimony by Dr. Kaminsky in which he concedes that none of his patients were ever harmed and that protests and demonstrations continued despite his leaving the Red Oak Atrium building. Fidelity also disputes whether Dr. Kaminsky actually lost patients due to the protests.

The evidence shows that the protestors, whose entry into the building Fidelity failed to prohibit, often succeeded in blocking Dr. Kaminsky's patients' access to his medical office. Under the reasoning of the *Steinberg* case, omissions by a landlord which result in patients' lack of access to the office of a practicing physician would suffice to establish a permanent deprivation of the use and enjoyment of the premises for their leased purpose, here "an office for the *practice* of medicine." *Steinberg,* 505 S.W.2d at 697; *accord, Downtown Realty, Inc.,* 748 S.W.2d at 312 (not-

ing jury's finding that a constructive eviction resulted from the commercial landlord's failure to repair a heating and air conditioning system in a rooming house).

Texas law has long recited the requirement, first stated in *Stillman,* 266 S.W.2d at 916, that the landlord commit a "material and permanent" act or omission in order for his tenant to claim a constructive eviction. However, as the *Steinberg* and *Downtown Realty, Inc.* cases illustrate, the extent to which a landlord's acts or omissions permanently and materially deprive a tenant of the use and enjoyment of the premises often involves a question of degree. Having reviewed all the evidence before the jury in this case, we cannot say that its finding that Fidelity's conduct permanently deprived Dr. Kaminsky of the use and enjoyment of his medical office space was so against the great weight and preponderance of the evidence as to be manifestly unjust. *Cain,* 709 S.W.2d at 176; *In re King's Estate,* 150 Tex. at 666, 244 S.W.2d at 662. We overrule the fourth point of error.

We affirm the judgment of the trial court.